**VIGILANT INSURANCE CO., Plaintiff,**

v.

**Courtney Ann BEHRENHAUSEN, et al., Defendants.**

**No. 94–0638–CV–W–3.**

United States District Court, W.D. Missouri, Western Division.

June 13, 1995.

Paul P. Hasty, Jr., Wallace, Saunders, Austin, Brown & Enochs, Chartered, Kansas City, MO, for plaintiff Vigilant Ins. Co.

Philip R. Dupont, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, for defendants Courtney Ann Behrenhausen, Sarah Elizabeth Behrenhausen.

Fred Wilkins, Stephen B. Millin, Wilkins & Millin, P.C., Kansas City, MO, for defendant Daneen Householter.

Ward K. Brown, Richard D. Rhyne, Craft, Fridkin & Rhyne, Kansas City, MO, Robert D. Kroeker, Berry F. Laws, III, Martin, Leigh & Laws, Kansas City, MO, for defendant Berry F. Laws, III.

### ORDER

ELMO B. HUNTER, Senior District Judge.

This is a declaratory judgment action by an insurance company requesting the Court to determine it has no indemnification liability and thus no duty to defend defendant Laws in a wrongful death charge in Jackson County. Currently pending before the Court is Defendants' Motion to Dismiss or in the Alternative Stay this Action pending final disposition of the underlying state court action.

## I. BACKGROUND

This matter arises out of a murder that occurred at Kansas City International (KCI) Airport on October 25, 1993. At that place and time, Grady Motes shot and killed Roger Behrenhausen. Mr. Motes, who ultimately pled guilty to this murder, states that he shot Roger Behrenhausen at the direction of David Langhorn. After the Behrenhausen murder, David Langhorn took his own life.

Subsequently, Behrenhausen's daughters filed a petition for wrongful death alleging Mr. Langhorn's conduct caused Mr. Behrenhausen's death under the alternative theories of intentional conduct and/or negligence. This petition was filed in the Jackson County, Missouri Circuit Court against Barry Laws, Administrator Ad Litem of the Estate of David Langhorn. Notably, David Langhorn was insured under a policy of personal liability insurance coverage issued by plaintiff Vigilant Insurance Company (Vigilant). The policy excluded coverage for claims of bodily injury that were intended by the insured.

Because of the possibility of indemnification, defendant Laws requested that Vigilant defend the Behrenhausen action under this policy. In response, Vigilant engaged legal counsel to defend Mr. Laws in the wrongful death action under a reservation of rights regarding insurance liability coverage. Vigilant then filed the the above-styled action seeking an order from this Court declaring that it owes no duty to defend or indemnify the estate of David Langhorn for the claims brought by Courtney and Sarah Behrenhausen. Subsequently, Vigilant then filed a Motion to Intervene in the Behrenhausen state court wrongful death action and a separate Motion to Stay such action pending resolution of the instant action for declaratory judgment. The state court trial judge in the Behrenhausen action denied both motions. Although Vigilant has appealed from the denial of its Motion to Intervene, that appeal is still pending as of the date of this Order.

Vigilant asserts that there is no coverage for the Behrenhausens' claim because it was Langhorn's intentional act that caused bodily injury to Behrenhausen, and intentional acts are not covered by Langhorn's personal liability insurance coverage issued by Vigilant. In other words, Vigilant seeks to litigate in this declaratory judgment action the issue of whether Mr. Langhorn caused Mr. Behrenhausen's death, and if so, whether he acted intentionally or negligently.

In sole support of its contention, Vigilant argues that it must be allowed to try the intent issue in this declaratory action because it would be unjustly bound by any prior decision on this issue in the Behrenhausen underlying wrongful death action.

## II. DECLARATORY JUDGMENT

Declaratory judgment actions are an exception to the general rule that a court does not have the authority to decline to exercise jurisdiction conferred upon it. *Aetna Casualty & Sur. Co. v. Jefferson Trust & Sav. Bank,* 993 F.2d 1364, 1366 (8th Cir. 1993); *Employers Mut. Casualty Co. v. El Dorado Springs R–2 Sch. Dist.,* 264 F.Supp. 669, 670 (W.D.Mo.1967). Accordingly, this Court is not required to exercise jurisdiction over the present action if, under the particular circumstances presented to the Court, it determines that the action ought not to proceed at this time. Specifically, the Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." *Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962); *see also Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942). The issue, therefore, is not whether this court has jurisdiction, but

rather whether this jurisdiction should be exercised when a suit involving the same issues is pending in another court. *State Farm Mut. Auto. Ins. Co. v. Bonwell,* 248 F.2d 862, 864–65 (8th Cir.1957); *Employers Mut. Casualty Co. v. El Dorado Springs R–2 Sch. Dist.,* 264 F.Supp. at 670.

The determination of whether to accept jurisdiction is entrusted to the trial court's discretion. *State Farm Mut. Auto. Ins. Co. v. Bonwell,* 248 F.2d at 865. The nature of this discretion is illustrated by the United States Supreme Court's holding in *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952):

> The Federal Declaratory Judgments Act, facilitating as it does the initiation of litigation by different parties to many-sided transactions, has created complicated problems for coordinate courts. Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.

*Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. at 183–84, 72 S.Ct. at 221–22. Since no rigid mechanical rule governs the exercise of this discretion, this Court must balance a variety of factors to determine whether the instant law suit should be stayed pending final disposition of the Missouri wrongful death action. *See Krey Packing Co. v. Hamilton,* 572 F.2d 1280, 1284 (8th Cir.1978); *Employers Mut. Casualty Co. v. El Dorado Springs R–2 Sch. Dist.,* 264 F.Supp. at 671. In balancing these factors, each case must be decided upon its own particular facts. *State Farm Mut. Auto. Ins. Co. v. Bonwell,* 248 F.2d at 865; *Employers Mut. Casualty Co. v. El Dorado Springs R–2 Sch. Dist.,* 264 F.Supp. at 671.

An important factor in determining whether a declaratory judgment action should be stayed pending suit in another court is the identity of issues between the pending law suits. *Employers Mut. Casual-*

*ty Co. v. El Dorado Springs R–2 Sch. Dist.,* 264 F.Supp. at 671. If the issues involved in each case are substantially identical, allowing each suit to proceed results in the wasting of valuable judicial resources. In the instant cases, the issues presented in the Missouri wrongful death action and the district court declaratory judgment action are substantially identical. To resolve the controversy in either case, the respective court must determine whether Mr. Langhorn caused Mr. Behrenhausen's death, and if so, whether he acted intentionally or negligently. Accordingly, this Court finds that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law." *Brillhart v. Excess Ins. Co.,* 316 U.S. at 495, 62 S.Ct. at 1175–76. *See also American States Ins. Co. v. Brown,* 333 F.Supp. 209 (W.D.Mo.1971).

This court has previously recognized that "the object of the statute is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by courts of the states." *Lumbermens Mut. Casualty Co. v. Edelman,* 214 F.Supp. 1, 3 (W.D.Mo.1963) (citing *Aetna Casualty & Sur. Co. v. Quarles,* 92 F.2d 321, 324 (4th Cir.1937)). The court in *Indemnity Ins. Co. v. Schriefer,* 142 F.2d 851, 853 (4th Cir.1944), after noting that the plaintiff insurance company's claim in the federal court was one that could "be asserted as well after the conclusion of the suit in the state court, as it can now, and, if the company prevails in that suit, there will, of course, be no occasion to assert it at all" went on to hold that:

> There could be no possible justification for dragging into the federal court the litigation of the issues pending in the state court, for the sake of obtaining a declaratory judgment as to a matter which will have no practical significance if the defendants prevail in the state court, and which the company can litigate as well after the termination of the state court litigation as now, if the defendants do not prevail.

*Id.*

Although the reasoning up to this point strongly favors a decision to dismiss or

stay, the Court notes that Plaintiff's primary argument in opposition to a dismissal or stay of the instant declaratory judgment action is the inequity of the potential, if not imminent, application of collateral estoppel to bar it from litigating the instant action in the wake of a verdict of negligence in the underlying wrongful death action. This unique problem bears further discussion.[1]

### III. COLLATERAL ESTOPPEL

■ Traditionally, collateral estoppel, or issue preclusion, precluded the same parties from relitigating issues which had been previously adjudicated. The scope of federal collateral estoppel was extended, however, in the landmark case of *Blonder–Tongue Lab. v. Univ. of Illinois Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), where the Supreme Court ruled, in the context of a patent infringement suit, that the doctrine of mutuality need not apply under federal principles of collateral estoppel. In the wake of *Blonder–Tongue*, the Eighth Circuit now uses a four-point test for determining whether collateral estoppel is appropriate: (1) Is the issue identical to one in a prior adjudication? (2) Was there a final judgment on the merits? (3) Was the estopped party a party or in privity with a party to the prior adjudication? (4) Was the estopped party given a full and fair opportunity to be heard on the adjudicated issue? *Oldham v. Pritchett*, 599 F.2d 274, 279 (8th Cir.1979); *Gerrard v. Larsen*, 517 F.2d 1127, 1130 (8th Cir.1975).

■ Missouri law on the doctrine of mutuality was similarly extended in *Oates v. Safeco Ins. Co.*, 583 S.W.2d 713, 719 (Mo.1979) (en banc). Because Missouri law applies to the substantive issues raised in Defendants' motion, it is necessary to examine Missouri case law on collateral estoppel in order to render a decision in this case. In *Oates*, the court acknowledged that Missouri had previously strictly adhered to the rule of mutuality in applying the doctrine of collateral estop-

pel. The *Oates* court then went on to recognize that the concept of collateral estoppel had been liberalized in many jurisdictions so as to eliminate the requirement of mutuality, following the lead of Chief Justice Traynor in *Bernhard v. Bank of Am. Nat'l Trust & Sav. Assn*, 19 Cal.2d 807, 122 P.2d 892 (1942). The *Oates* court further noted that the Court of Appeals for the Western District of Missouri in *La Rose v. Casey*, 570 S.W.2d 746 (Mo.Ct.App.1978), expressly abolished the requirement of mutuality and adopted the *Bernhard* doctrine, which requires that a court in determining whether the application of collateral estoppel is appropriate should consider the following factors: (1) Whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) Whether the prior adjudication resulted in a judgment on the merits; and (3) Whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.

The *Oates* court then went on to modify the *Bernhard* doctrine by adding to the three factors there listed as controlling still another, fourth factor which should be considered before a stranger to the prior litigation will be bound by the prior judgment. That fourth requirement adopted by the Missouri Supreme Court calls for consideration of "whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Oates*, 583 S.W.2d at 719 (citing *Johnson v. United States*, 576 F.2d 606, 614 (5th Cir. 1978)). *See also, Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Bruszewski v. United States*, 181 F.2d 419 (3d Cir.), *cert. denied*, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950); *La Rose v. Casey*, 570 S.W.2d at 749–50.

■ In considering fairness to the party against whom preclusion is urged, this Court

---

1. Since the underlying complaint is still pending, the collateral estoppel issue on indemnity is not yet ripe for decision. *See LaSalle Nat'l Trust, N.A. v. Schaffner*, 818 F.Supp. 1161, 1173 (N.D.Ill.1993) (citing *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.*, 953 F.2d 334, 338 (7th Cir.1992); *Travelers Ins. Co. v. Penda*

*Corp.*, 974 F.2d 823, 833 (7th Cir.1992); *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1042 (7th Cir.1992)). Accordingly, this Court now discusses the collateral estoppel issue only as a factor to be considered in deciding whether or not to stay or dismiss the instant declaratory judgment action.

also recognizes that there may be special difficulties in precluding a party who did not have a full and fair opportunity to litigate in the prior action:

> "[A] party who has had one fair and full opportunity to prove a claim and has failed in that effort, should not be permitted to go to trial on the merits of that claim a second time. Both orderliness and reasonable time saving in judicial administration require that this be so unless some overriding consideration of fairness to a litigant dictates a different result in the circumstances of a particular case."

*Rachal v. Hill,* 435 F.2d 59, 63 (5th Cir.1970), *cert. denied,* 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971) (emphasis added) *(quoting Bruszewski,* 181 F.2d at 421). Thus, in precluding a party from relitigating an issue, the court must be satisfied not only that the party against whom estoppel is urged has had a full and fair opportunity to litigate the issues in the prior proceeding, but also that application of the doctrine, under the circumstances, will not result in injustice to the party. *Rachal,* 435 F.2d at 62. Moreover, the court must be satisfied that the application of collateral estoppel does not contravene any overriding public policy. *Garner v. Giarrusso,* 571 F.2d 1330, 1336 (5th Cir. 1978).

Applying these concepts to the circumstances at bar, this Court notes that as a non-party to the underlying state court wrongful death action, Vigilant likely will not have a full and fair opportunity to litigate the issue of whether Mr. Langhorn caused Mr. Behrenhausen's death, and if so, whether he acted intentionally or negligently. Although Vigilant is under a duty, and has actually undertaken, to hire counsel to represent defendant Laws as executor of Mr. Langhorn's estate in the wrongful death action, Mr. Laws' interest and Vigilant's interest in the outcome of the case not only are divergent, but may well conflict altogether. *See, e.g., Alsbach v. Bader,* 616 S.W.2d 147, 153 (Mo. Ct.App.1981).

If a trier of fact determines that Mr. Langhorn did not cause Mr. Behrenhausen's death, there is no liability for Mr. Laws, as executor of Mr. Langhorn's estate, or Vigi-lant. If a trier of fact determines that Mr. Langhorn negligently caused Mr. Behrenhausen's death, Mr. Laws, as executor of Mr. Langhorn's estate, would be liable for damages and Vigilant very likely would be required to indemnify under its policy of personal liability insurance coverage of Mr. Langhorn. If a trier of fact determines that Mr. Langhorn intentionally caused Mr. Behrenhausen's death, however, Mr. Laws, as executor of Mr. Langhorn's estate, would be liable for damages but Vigilant likely would not be required to indemnify because the policy excluded coverage for claims of bodily injury that were intended by the insured.

■ Although these unique circumstances seem to create a clear conflict of interest in defending the underlying action, the conflict of interest disappears upon recognition that although Vigilant is required under the terms of its policy to hire an attorney to defend Mr. Laws against defendant Courtney and Sarah Behrenhausen's wrongful death claim, this attorney has a duty to defend the interests of only its client, Mr. Laws. This duty does not shift based on who is paying the attorney's fees. This view is wholly consistent with recent Missouri case law providing that

> "*where one is bound to protect another from liability, he is bound by the result of litigation to which the other is a party, provided he had* notice of the litigation, and *an opportunity to control and manage it,* and that the judgment rendered therein is conclusive in the subsequent action upon the indemnity contract as to all questions and issues necessarily determined therein."

*Whitehead v. Lakeside Hosp. Ass'n,* 844 S.W.2d 475, 482 (Mo.Ct.App.1992) (emphasis added) (quoting *Finkle v. Western Auto. Ins. Co.,* 26 S.W.2d 843, 849 (Mo.Ct.App.1930)).

Based on the facts as presented, Vigilant currently neither is controlling nor managing the litigation proceeding in the state court wrongful death action; it simply is required by contract to pay for counsel to represent the insured. There can be no dispute that the duty of counsel in that action is to defend its client and that there is no duty to advocate the rights of the insurance company, a non-party to the action altogether. The in-

surance company reserved its rights to litigate the issue of coverage at a later date through the declaratory judgment action currently pending before this Court. "It [is] the function of the declaratory judgment action ... to independently and finally adjudicate the liability of the insurer to the insured under the policy...." *Whitehead,* 844 S.W.2d at 482.

This Court believes that Vigilant is prohibited from any opportunity, let alone a full and fair opportunity, to be heard on the adjudicated issues in the underlying wrongful death action. In fact, competent representation of defendant Laws may actually require counsel to present evidence and make arguments antagonistic to Vigilant's interest. *See Oates v. Safeco Ins. Co.,* 583 S.W.2d at 719–721.[2]

## CONCLUSION

Based on this discussion, the above factors justify a stay of the instant declaratory judgment action regarding insurance coverage. Accordingly, it is hereby **ORDERED** that Defendants' Motion to Dismiss or Stay is **GRANTED** and the instant action for declaratory judgment shall be **STAYED** pending final disposition of the Behrenhausen wrongful death action currently pending in the Jackson County, Missouri Circuit Court.

**IT IS SO ORDERED.**

---

**2.** There is no indication in the record that counsel retained by Vigilant has or will not properly and competently represent solely the interests of defendant Laws and defendant Laws has not implicitly or explicitly made this charge.